**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JEFFREY A. JACKSON,

                              Plaintiff,

          - v -                                              Civ. No. 1:03-CV-722
                                                                      (RFT)
KATHY JIMINO, individually and as Rensselaer
County Executive, and RENSSELAER COUNTY

                              Defendants.

| APPEARANCES: | OF COUNSEL: |
|---|---|

OFFICE OF PETER HENNER                          PETER HENNER, ESQ.
Attorney for Plaintiff
P.O. Box 326
Clarksville, NY 12041

KERNAN PROFESSIONAL GROUP, LLC                  DAVID A. BAGLEY, ESQ.
Attorney for Defendants
1310 Utica Street
P.O. Box 750
Oriskany, NY 13424

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

**MEMORANDUM-DECISION and ORDER**

          It has been three and one-half years since Jackson initiated this lawsuit alleging that his First

Amendment right to free speech was violated when Defendants failed to reappoint him as Director

of the Bureau of Real Property Tax Services in retaliation for speaking out about Rensselaer County

Local Law No. 6 and other matters.  Dkt. No. 1, Compl., at ¶¶ 128-54.  Subjecting the thorny legal

issues of this case to careful scrutiny through a series of dispositive motions and then rendering

decisions as comprehensive as possible so that this case may eventually advance to closure has

1

consequentially protracted the case rather than judiciously resolve it. Reaching a final resolution of this case has been forestalled primarily due to attainment of a final disposition as to the appropriate applicability of *Garcetti v. Ceballos*, __ U.S. __, 126 S.Ct. 1951 (2006) to the facts of his case.

Earlier in this litigation, and without the benefit of *Garcetti*, on May 20, 2005, the Honorable Gary L. Sharpe, United States District Judge, upon Oral Order, granted in part and denied in part Defendants' Motion for Summary Judgment. Dkt. Nos. 27, Min. Entry & 28, Transcript (Tr.) of Oral Order. As the matter was being set for trial before Judge Sharpe, the parties consented, pursuant to 28 U.S.C. § 636(c), to a disposition of the matter by this Court, and Judge Sharpe issued an Order referring the case to us. Dkt. No. 31, Order, dated Sept. 8, 2005. As this matter was being prepared to be tried before this Court, the parties requested, and this Court granted, a stay of the case while awaiting the United States Supreme Court's *Garcetti* decision, since it was presumed then that it may have an impact upon Jackson's case. Order, dated Oct. 14, 2005. The Stay was lifted on June 1, 2006, after the Supreme Court issued its decision in *Garcetti*.

A Second Motion for Summary Judgment was filed (Dkt. No. 38), presumptively to address exclusively the new issued raised by *Garcetti*, and this Court issued a Memorandum-Decision and Order (MDO), dated January 19, 2007, granting in part and denying in part said Motion.[1] Dkt. No. 43. This Order appraised the applicability of *Garcetti* to Jackson's claims and after such analysis we determined, *inter alia*, that there was a genuine issue of material fact as to whether Jackson, when speaking about Local Law No. 6, the tax bill fiasco, and public attacks upon him, was doing

---

[1] The Motion Papers on this second round of dispositive motions were (1) Defendants' Motion with Exhibits (Dkt. No. 38), (2) Jackson's Response in Opposition to the Motion with Exhibits (Dkt. No. 41), and (3) Defendants' Reply to Jackson's Response to Motion (Dkt. No. 42). The Memorandum-Decision and Order is reported as *Jackson v. Jimino*, 2007 WL 189311 (N.D.N.Y. Jan. 19, 2007).

2

so as a part of his official duties or as a private citizen. *See Jackson v. Jimino*, 2007 WL 189311, at *16 (N.D.N.Y. Jan. 19, 2007).

Within a matter of weeks following the MDO, Defendants filed a Motion for Reconsideration of the MDO. Dkt. No. 46, Mot. for Recons., dated Feb. 12, 2007. Expectedly, Jackson opposes said Motion and filed a Memorandum of Law. Dkt. No. 48, Mem. of Law, dated Mar. 1, 2007. The grounds upon which Defendants ask this Court to reconsider the January 19, 2007 MDO are several fold:

> 1. The Court committed clear errors of law as to the summary judgment standards and the governing substantive law;
>> a. The denial of summary judgment was wrongly based upon speculation and conjecture; and
>> b. There is no basis in law in differentiating expressions otherwise unprotected based on media coverage.
> 2. The Court misapprehended that all of the Plaintiff's expressions were in fact unprotected under the rule of *Garcetti v. Ceballos*, media reportage notwithstanding;
> 3. The Court improperly based its decision on inadmissible evidence;
> 4. The Court improperly applied the law of the case doctrine; and
> 5. In the alternative, the Court should certify its decision for interlocutory appeal and stay.

Dkt. No. 46, Mem. of Law.

In sum, Defendants assert that this Court should have granted summary judgment as to all of the Plaintiff's expressions, in their entirety, because they were unprotected speech under *Garcetti*. We respectfully disagree. At this juncture of the litigation, based upon the record that is before us, Defendants have failed to establish that there is no genuine issue of material fact that Jackson always spoke within the scope of his official duties. For all of the reasons to follow, Defendants' Motion for Reconsideration is **denied**.

# I.  DISCUSSION

## A.  Standard for Motion for Reconsideration

Generally, reconsideration of a court's prior decision is warranted only where the moving party demonstrates "(1) an intervening change of controlling law; (2) the availability of new evidence; and/or (3) the need to correct a clear error or prevent manifest injustice." *Bartz v. Agway, Inc.*, 849 F. Supp. 166, 167 (N.D.N.Y. 1994) (McAvoy, C.J.) (citing *Wilson v. Consol. Rail Corp.*, 815 F. Supp. 585 (N.D.N.Y. 1993) & *McLaughlin v. New York Governor's Office of Employee Relations*, 784 F. Supp. 961, 965 (N.D.N.Y. 1992)); *see also Delaney v. Selsky*, 899 F. Supp. 923, 925 (N.D.N.Y. 1995) (citing *Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.), *cert. denied*, 464 U.S. 864 (1983)).  It is the reliance upon the third prong - to correct clear error or prevent manifest injustice -  that Defendants ask this Court to reconsider the MDO.  Although we do not find that Defendants have met the burden required for a reconsideration motion, we will nonetheless address the various contentions they raise.

## B.  Court Misapprehended the Law Concerning Summary Judgment and Substantive Law

Defendants submit that the Court committed clear error when denying Defendants' Motion for Summary Judgment on the basis of speculation and conjecture.  Defendants further contend that this Court misapplied the substantive law.  Refined to its unavoidable core, the underlying premise of Defendants' position is that this Court erroneously engrafted a "media coverage" rule onto the *Garcetti* ruling.  Stated another way, Defendants charge this Court with creating an unreasonable demarcation of classifying speech as official or private citizen based upon the presence of media coverage.

4

Of course we would not disagree with the understanding that speculation and conjecture should not defeat a motion for summary judgment.[2]  However, perhaps it is the Defendants who have fallen prey to speculation and conjecture as to the scope and reasoning of the Court in rendering the MDO in order to have this Court transform *Garcetti* into an impermeable rule that all speech by governmental officials, no matter the facts presented, is fully engulfed by their governmental duties and eschewing, under any circumstance, the possibility or the opportunity that on another given day they may speak as private citizens on matters that may be relatively close to their employment.  If we were to adopt Defendants' argument, we would inextricably have find that *Garcetti* dictates a bright-line rule - an all or nothing determination - on an employee's speech even if it tangentially concerns the official's employment.  We find that *Garcetti* does not stand for that proposition.

"The First Amendment protects some expressions related to the speaker's job."  *Garcetti*, 126 S.Ct. at 1959.  The fact that some of an official's speech may be "job related does not mean, *a fortiori*, that [the official's] claim is barred under *Garcetti*."  *McLaughlin v. Pezzolla*, 2007 WL 676674, at *6 (N.D.N.Y. Feb. 28, 2007).[3]  *Garcetti* made it evidently clear that "[m]any citizens do much of their talking inside their respective workplaces, and it would not serve the goal of treating public employees like any member of the general public . . . to hold that all speech within the office

---

[2] Second Circuit precedents have been rather consistent that a motion for summary judgment should not be denied upon conjecture, speculation, or metaphysical rumination, but to place it in context, that standard has generally been applied to the presentation of litigants than a court reviewing whether a genuine issue of fact exists.  *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002); *Kerzer v. Kingly Mfg. Co.*, 156 F.3d 396, 400 (2d Cir. 1998); *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).  Yet, said standard should be, was, and will continue to be endorsed by this Court.

[3] In denying a motion to dismiss and granting plaintiff an opportunity to file an amended complaint, the *McLaughlin v. Pezzolla* court found that "it is possible that Plaintiff could prove that some of her speech was beyond the scope of her professional duties and thus protected by the First Amendment[.]"  2007 WL 676674, at *8.

is automatically exposed to restriction." 126 S.Ct. at 1959 (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 573 (1968)); *cf. Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006) (providing examples of public employees speaking on matters of public concern that were not within their official duties).

When summarizing some of the more salient news coverage about the swirling context and events of the tax bill debacle, the prospect that the County Legislature may amend Local Law No. 6, and Jackson's corresponding written and verbal statements throughout, the Court's primary focus upon Jackson's statements was always to determine whether he was speaking pursuant to his official duties or as a private citizen. We note that it was the parties that presented the record to the Court, not the converse. Based upon the record presented, we found that there was a genuine issue of material fact as to whether Jackson consistently spoke in his official capacity on matters related to his purportedly fragmented bureau or whether the maelstrom over the late filing of the tax bills and Jackson's efforts to amend Local Law No. 6, post 1999, shifted his speech from official duties to private citizen. We concluded that we could not state definitively whether these statements were made pursuant to his official duties, which as the moving party was Defendants' duty to meet.

Let us review the more salient pronouncements of this Court which invariably reflect that Defendants failed to establish that Jackson always spoke pursuant to his official duties:

> Because of a confluence of a number of factors, our dilemma is determining whether Jackson was speaking pursuant to his employee responsibilities or as a private citizen. As observed in *Garcetti*, "conducting these inquires [have] prove[n] difficult [because] of the enormous variety of fact situations in which critical statements by . . . public employees may be thought by superiors . . . to furnish grounds for dismissal."

2007 WL 189311, at *15 (quoting *Garcetti v. Ceballos,* 126 S.Ct at 1958 (citation omitted)) & n. 7 ("The Supreme Court further noted that neither the subject matter, *i.e.*, subjects relating to the speaker's job, nor the place of the expressions are dispositive of whether Ceballos was speaking pursuant to his official duties. *Garcetti v. Ceballos*, 126 S.Ct. at 1959").

6

******

Here, based upon the record presented, that being the parties' dispute of the facts regarding the scope of his official capacity and Jackson's dispute that these public statements were made in his official capacity, we cannot say that there is no material and genuine issue of fact. Notwithstanding the parties' dispute, the facts and events after 1999 are more blurred, or convoluted, than those between 1995 to 1999, which are so much more apparent to us as speech within his official duties.

*Id*.

******

Based upon a review of this record we are left with too many questions and thus there is a presence of a material issue of fact[.]

*Id*. at *16.

******

As comprehensive as *Garcetti* is, we are still left without a standard or a guide to help us balance or maneuver through those public statements that may be mixed, or rather disguised because the scope of job responsibilities are not so manifest. Thus, as the Court cannot definitively state that Plaintiff was speaking pursuant to his official duties, a question of fact remains as to Plaintiff's speech beginning in the year 2000.

Id. (citations omitted).

The sum of these parts confirm that Defendants failed to meet their burden as there is a genuine issue of material fact whether Jackson spoke at some point or stage as a private person and outside his official duties.

Contorting the Court's prose to fit Defendants' argument also fails. Citing to our use of words like "may" and "cast doubt" in support of their notion that the Court was speculating and conjecturing may be adroit but yet unavailing. All that this language implies is that there is an unresolved question of fact. By cherry-picking phrases and taking them out of their context, as Defendants have done so well with their Motion, in order to suggest that the Court forged a rule of law inconsistent with the policy and rulings of *Garcetti* does not serve their argument well. For example, Defendants repeatedly refer to the Court's phrase "within the public realm," without putting the phrase in proper context. The record indicated that letters written by Jackson to Zwack, Swartz, and Jimino beginning in 2000 were published in the press and were within "the public

realm." We were making clear to the reader that even though these letters had been published in the press, notwithstanding being on official letterhead, publication was not dispositive on whether he was speaking at that time pursuant to his official duties. 2007 WL 189311, at *14. The publication of the letters is not controlling, however, the speech itself may be determinative on the issue whether he was speaking as a private citizen or public official. The letters could have been within his official duties and/or they may have also reflected an opinion of a private person stating a matter of public concern and not a personal grievance. Based upon the record, we were unable to clearly define the contours of that and other statements, hence the denial of the Motion.

The fundamental demarcation, if any, exists is that prior to 1999, in our view of the record, Jackson is speaking exclusively about the absence of the tax map function, the operation of his agency, and obtaining opinions from others as to the legality of Local Law No. 6, all of which would be a part of his official duties. Compl. at ¶¶ 43-49; Dkt. No. 38-2, David Bagley, Esq., Decl., dated Aug. 24, 2007, Ex. E. But after 1999, such speech appears to have escalated and his public and private advocacy directed to the County Legislature, particularly County Legislature Swartz, to amend Local Law No. 6 and further seeking the County Executive to join in the quest to repeal the Local Law, may have been outside the scope of his official duties, and, in some respects, his statements concerning the tax bill debacle and fending off Zwack's personal attacks could conceivably be viewed by reasonable jurors as a private citizen speaking. *See* 2007 WL 189311, at *9-10 (listing Jackson statutory duties).[4] It is fair for a reasonable juror to find, under these

---

[4] We carefully scrutinized Jackson's memoranda and correspondence during the period of 1996 to 1999, as set forth in the records, and in sum, he is seeking legal opinions on the statute and reporting problems to the County Executive. Dkt. No. 38-2, Bagley Decl., Ex. E. They constitute, under *Garcetti,* statements made pursuant to Jackson's official duties. Whereas, in late 1999, Jackson, *inter alia*, discusses amending Local Law No. 6, which under the disputed facts presented, may not be within his official duties and may be the type of advocacy a private person would engage in. *Garcetti*, 126 S.Ct. at 1961 (ruling that

circumstances, that his activities and speech urging the County Legislature to amend the Local Law, which he claims from direct experience that the existing law created inefficiency in his bureau, would parallel those of other private citizens.

Though at first glance this appears to be a matter of first impression since *Garcetti*, the prospect of finding official duty under one set of circumstances and private speech in another is not novel. Take for example, the Honorable Alfred V. Covello, United States District Judge for the District of Connecticut, who found himself employing a similar strategy. *See Milde v. Hous. Auth. of the Town of Greenwich*, 2006 WL 2583086 (D. Conn. Sept. 5, 2006). Judge Covello analyzed chronologically all of Milde's statements and found all but one to be made within her official duties. However, with respect to Milde's interview by a newspaper concerning her statements at a board meeting, Judge Covello concluded that there are genuine issues of material fact as to whether Milde was acting pursuant to her official duties when she spoke to the local media. *Id*. at *7. All of Milde's causes of action were dismissed on summary judgment save her cause of action pursuant to 42 U.S.C. § 1983 that "specifically alleg[ed] that the defendants subjected Milde to adverse employment actions in retaliation for speaking to the media after the May 22nd Board Meeting in violation of the First Amendment." *Id*.

At this stage of the litigation, we do not disagree with the proposition that some of Jackson's

---

"[w]e . . . have no occasion to articulate a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate . . . [and w]e reject . . . that employers can restrict employees' rights by creating excessively broad job descriptions."); *Caruso v. Massapequa Union Free Sch. Dist*., 2007 WL 886191, at *3 (E.D.N.Y. Mar. 21, 2007) (finding that "[t]he question of whether an employee speaks pursuant to his official duties is not always easy and *Garcetti* sets forth no dispositive test"). The Supreme Court has consistently acknowledged, undiminished by the scope of *Garcetti*, the "necessity for informed, vibrant dialogue[s]" perchance augmented by "well informed views of governmental employees engaged in [the] discussion." *Garcetti*, 126 S.Ct. at 1958 & 1959. Additionally, the matter of whom Jackson reported to in his official duties, County Executive, County Legislature, or both, also remains an unresolved question of fact.

statements could be construed as being spoken pursuant to his official duties as alluded to by Defendants. Dkt. No. 46, David Bagley, Esq., Decl., Feb. 12, 2007, at ¶ 14 (citing to text of some of Jackson's letters and memoranda as being made as a part of his official duties). However, that is precisely the point that this Court highlighted in the MDO - it is a question of fact for the jury to decide and cannot be decided as a matter of law. We found competing inferences abound from his speech and we must not forget that pursuant to the very same summary judgment standard Defendants feel was not adhered to the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party, in this case Jackson. *See Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). Where, as here, there are factual issues on the "nature of [the official] duties, the particular statements constituting the speech at issue and the context in which those statements were made," summary judgment is not appropriate. *Caruso v. Massapequa Union Free Sch. Dist.*, 2007 WL 886191, at *5 (E.D.N.Y. Mar. 21, 2007).

### C. News Articles as Hearsay

In terms of the news articles discussed within the MDO, Defendants raise for the very first time by this Motion for Reconsideration that the expressions quoted within the news articles are inadmissible hearsay being offered to prove the truth of the matters. For the purpose of opposing Defendants' Motion for Summary Judgment, Jackson's attorney, Peter Henner, submitted the Complaint and the attached Exhibits A-FF. Dkt. No. 41, Peter Henner, Esq., Decl., dated Oct. 20, 2006, at ¶¶ 2(A) & (B). It is Plaintiff's Exhibit W that contained the news articles in question. Henner's Declaration and the massive girth of the Complaint and Exhibits were sufficiently prominent to put Defendants on alert of their relevance to the Motion. Jackson did not attempt to conceal the news articles. Much to the contrary, he made ample reference to the news articles in his

10

Memorandum of Law.  Dkt. No. 41.

The Court does not dispute the legal maxim that hearsay, and news articles in particular, which are being offered for the truth asserted are inadmissible to defeat a motion for summary judgment.  The body of law on the exclusion of hearsay in summary judgment motions is rather copious and consistent.  *Mandal v. City of New York*, 2006 WL 3405005, at *1 (S.D.N.Y. Nov. 26, 2006); *Pamphile v. Tishman Speyers Properties, L.P.,* 2006 WL 1806505, at *5 (E.D.N.Y. Jun 29, 2006); *Gonzalez v. City of New York*, 354 F. Supp. 2d 327, 347 n.29 (S.D.N.Y. 2005); *Miles v. City of New York*, 2002 WL 31410346, at *4 (E.D.N.Y.  Oct. 24, 2002); *Fridman v. City of New York*, 183 F. Supp. 2d 642, 646 (S.D.N.Y. 2002); *Ladner v. City of New York*, 20 F. Supp. 2d 509, 519 (E.D.N.Y. 1998).  The hearsay rule notwithstanding, we never concluded that the news articles were being offered for the truth of the statements nor did Jackson imply as much.  We also did not discern that there was any dispute that the statements contained in the news articles were actually made.  We accepted all along that the articles were presented for several reasons, none of which pertained to the truth of the statements.  First, we assumed that the articles were submitted not for the truth of the matter but for the fact that the statements did occur and were published.  *Shafii v. PLC British Airways*, 22 F.3d 59, 64-65 (2d Cir. 1994) (finding that the statements were offered for that fact that they had occurred); *Krause v. Buffalo and Erie County Workforce Dev. Consortium, Inc.*, 425 F. Supp. 2d 352, 378 (W.D.N.Y. 2006) (not excluding two news article in that they were not submitted for the truth of the matter therein); *Pfohl Bros. Landfill Site Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 156, n.22 (W.D.N.Y. 2003) (accepting that the news articles were being entered for the purpose that such statements were published rather than for the truth of the matter reported therein).  Second, these news articles, in our view, were submitted to demonstrate that the

nature of Jackson's speech was not personal grievances but of a public nature.  Dkt. No. 40, Pl.'s

Mem. of  Law at p. 4.  We also accepted the articles as background on the tax bill disaster, the

Jackson-Zwack public feud, the County Legislature consideration of amending Local Law No. 6,

and the transparency of government, and not that they were intended to prove or disprove the truth

of the matters reported therein.  *Yarborough v. City of Warren*, 383 F. Supp. 676, 682 (D.C. Mich.

1974); *Creek v. Vill. of Westhaven*, 1993 WL 512825, at *2 (N.D. Ill. Dec. 9, 1993) (finding that

newspapers may serve a useful non-hearsay purpose such as background information of the events

at issue).  Even Defendants made reference to the media reports, especially the news report about

the tax bills.  Dkt. No. 38-4, Bagley Decl., Ex. B, Pl.'s Response to Defs.' First Statement of Facts

(SOF) at ¶ 18.  Lastly, and probably most importantly, we believe the articles were submitted to

reflect the state of mind of Defendant Jimino, who decided not to re-appoint Jackson, and Jackson's

motive behind his speech.  *Syracuse Broad. Corp v. Newhouse*, 295 F.2d 269, 276 (2d Cir. 1961)

(news article admissible to show state of mind); *Roniger v. McCall*, 119 F. Supp. 2d 407, 410

(S.D.N.Y. 2000) (articles admitted as to defendant's state of mind).  During her deposition, Jimino

testified that the first time she had learned of the Bureau of Tax Services function issue was by a

news article.  Dkt. Nos 25 & 41, Kathy Jimino Dep. Tr., dated June 1, 2004, at p. 5.  Further, she had

learned of the tax bill problem because "the problem had been reported in the newspaper and the

discussion in [the legislative] caucus was that it was a shame that there was this report in the

newspaper as opposed to having been settled inhouse."  *Id*. at p. 7.  She further testified that

discussion about Jackson surfaced during 2000 and 2001, "when the issue of the flawed tax bill was

in the newspaper."  *Id*. at p. 8.  Her state of mind is relevant in that Defendant Jimino is accused of

not re-appointing Jackson for retaliatory purposes, especially when you take into consideration

12

Jackson's inferences that when Jimino asked him not to generate any more negative publicity she was also referring to the tax map function and the Local Law.  Therefore, for all of these reasons, the newspaper articles were considered and not for the truth of the matter asserted therein.

If these news articles were offered to present objectionable hearsay and thus should not have been considered in any context, it was incumbent upon Defendants to raise this issue timely.  We relied upon Defendants' acquiescence as acceptance that there were no legal problems with these Exhibits.  By failing to object, or make a motion to strike, such argument could be deemed waived.  *H. Sands & Co., Inc. v. Airtemp Corp.*, 934 F.2d 450, 455 (2d Cir. 1991); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988) ("Rule 56(e) defects are normally waived where the party opposing the summary judgment motion fails to strike before the district court[.]"); *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 114 (2d Cir. 1987) (citing other circuits who have enforced this rule); *In re Teltronics Servs., Inc.*, 762 F.2d 185, 192 (2d Cir. 1985); *see also Gladstone Ford v. New York City Transit Auth.*, 43 Fed. Appx. 445, 450 (2d Cir. 2002) (unpublished decision) & 11 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 56.14[4][b] (3d ed. 2006).  Notwithstanding our discussion of the news articles, our conclusion that a question of fact ensues did not rely exclusively upon the  "media coverage."

Exclusive of the newspaper articles, there are other aspects of the record before us that support our finding that a question of fact exists as to whether Jackson was speaking consistent with his official obligations or as a private person.  While we will not recite in specific detail all of the facts set forth in the MDO, some repetition of disputed facts as to the nature of  Jackson's speech is warranted.  *See* 2007 WL 189311, at *6-14.  Jackson spoke out publicly and privately about the transfer of the tax mapping service, the legality of Local Law No. 6, and the administration of the

13

real property tax in Rensselaer County.  Dkt. No. 38-4, Bagley Decl., Ex E, Defs.' Statement of Facts (SOF) at ¶ 11; Dkt. No. 41-2, Pl.'s Second Statement of Facts (SOF) at ¶¶ 9, 10, & 17; *see also* Dkt. No. 38-4, Bagley Decl., Ex. C, Pl.'s Interrog. at ¶ 6.  To some degree, it appears that Jackson was aligning himself publicly with principles of the New York Assessor's Association and the New York Office of Real Property Services who were seeking to amend or repeal Local Law No. 6.  Compl. at ¶¶ 52-55, 89, & 93.[5]  Jackson also went as far as sending a memorandum to Zwack in 1999 stating "his personal as well as professional opinion . . . [that] New York Real Property Law is being violated in Rensselaer County and the only thing that needed to be done is to amend the local law of 1995 which removed the responsibility of tax mapping from Plaintiff's jurisdiction and to restore those tax map positions to Plaintiff's department budget."  Dkt. No. 38-8, Defs.' Second SOF at ¶ 20; Dkt. No. 41-2, Pl.'s Second SOF at ¶ 20; Dkt. No. 38-7, Bagley Decl., Ex. E (stating, *inter alia*, that the only thing that needs to be done is to amend the local law).  Jackson's memoranda to Zwack after January 25, 1999, generally included, among other things, a call for the amendment of Local Law No. 6.  Dkt. No. 38-7, Bagley Decl. Ex. E.  Then in January 2000, Rensselaer County mailed out incorrect tax bills, which cost the County significant penalties and interest.  This event and the probable governmental and systemic reasons for the occurrence received widespread news coverage.  Ultimately the tax bill fiasco and the counter charges as to who was to blame for the problem caused further eruption between the County Executive and Jackson.  Compl. at ¶¶ 71-88.  While this dispute between Zwack and Jackson simmered, which went public as well since the media published the letters and commentary exchanged between them, Jackson submitted a letter to Zwack defending his performance of his official duties.  Dkt. No. 38-8, Defs.' Second SOF at ¶¶

---

[5] The Complaint was sworn to on June 8, 2003.

22 & 23; Compl. at ¶¶ 56-69 & 70.  Jackson states he continually insisted that the county charter be

amended in order to comply with the state law and that the tax mapping function needed to be

returned to his agency.  Compl. at ¶ 68.  Although there is a dispute whether Jackson reported to the

County Executive or County Legislature or both, Jackson attempted to get the County Legislature

to return the tax  mapping function to his bureau, rally others' support to amend the Local Law in

dispute, and sought reversal of the Local Law directly from the County Legislature.  Dkt. No. 38-8,

Defs.' Second SOF at ¶¶ 25 & 26; Dkt. No. 41-2, Pl.'s Second SOF, at additional ¶ 1; Dkt No. 38-7,

Bagley Decl.,  Ex. E (correspondence to Edward Swartz, Chairperson of the County Legislature

budget and finance committee.); Compl. at ¶ 89.   When Jimino replaced Zwack as County

Executive, Jackson continued to advocate for a change of the Local Law.  Jackson Dep., dated July

27, 2004, at p. 25; Jimino Dep. at p. 25; Compl. at ¶¶ 102-06.

It appears from the record that Zwack may have felt that Jackson's advocacy to amend the

Local Law and the return of the tax map function to his bureau was beyond the scope of Jackson's

official duties.  It also seemed to Zwack that Jackson was the only person in county government

raising the county charter issue.  Dkt. Nos. 25 & 41, Henry Zwack Dep., dated June 2, 2004, at 138.

At one time in 2000, Zwack reminded Jackson that

> had he spent more time doing his work than trying to undo or change what was not
> going to be changed, he wouldn't have the continuing problems that he had in his
> office.  These culminated in rather more direct meetings in 2000, dealing with other
> issues that were a fallout of Jeff's wasting time trying to undo what the county
> legislature had done in 1995 and that were not going to be undone or changed.

*Id*. at pp. 100-01.

Zwack also stated "whether or not the [local] law was correct . . . all these peripheral arguments that

Jeff was trying to engage me in were nowhere near the level of importance" to other county matters.

*Id*. at p. 101.  At some point, he found Jackson's issues "silly."  *Id*. at p. 102.

15

Jackson intimates that even though Jimino asked him not to generate negative publicity that comment included the tax map function and Local Law No. 6.  Dkt. Nos. 25 & 41, Jackson Dep, dated July 27, 2004,. at pp. 14-15.

It is a question of fact that Jackson's pursuit to amend Local Law No. 6 fell within his official duties.  Statements made more broadly about the provisions of law may be beyond Jackson's official duties.  Similarly, criticizing another agency about computer failures or reporting on the inefficiencies of another county government create another question of fact whether Jackson was speaking pursuant to his official responsibilities or as a private person.  Additionally, another question of fact remains as to whether the public was seeking well-informed views from governmental employees, such as Jackson, in the civic discourse about the incorrect tax bills and how such error could have occurred, or even if Jackson's official duties required him to speak to the media at all about his job.  Hence, the scope of and actual official duties pose a question of fact.  Whether the personal and professional squabble, which became public, and Jackson's addressing it could conceivably be a private matter, a part of his official duties, or even speech of a private person of public concern such differing views generate a question of fact.  Again, as to any doubt or inferences, in terms of granting a motion for summary judgment, are resolved in the non-moving party, the Plaintiff here, favor.

**D.  Law of the Case**

Continuing in the same vein, Defendants cite as error the Court's accepting, as a matter of law, District Judge Sharpe's ruling on whether this matter was of public concern and whether there was a materially adverse employment consequence.  Defendants artfully argue that Judge Sharpe was merely "opining" when he found that this matter arose to the level of public concern, "at least

16

viewing the facts most favorably to Plaintiff." Dkt. No. 46-2, Bagley Decl. at ¶ 16.  Defendants have mistakenly clutched too reverentially to Judge Sharpe's dependent clause on this ruling.  We respectfully disagree with Defendants' characterization of Judge Sharpe's rulings that this dependent clause - viewing most favorably - qualifies his dispositive finding on public concern.  Thus, we will further adhere to our finding that law of the case is applicable.

In the framework of First Amendment retaliation actions, whether the speech in issue addresses a matter of public concern is a question of law to be decided by the court.  *Skehan v. Vill. of Mamaroneck*, 465 F.3d at 106 (citing *Gronowski v. Spencer*, 424 F.3d 285, 292 (2d Cir. 2005)).  In this respect, as a matter of law, that is exactly what Judge Sharpe concluded, and by doing so foreclosed the issue of public concern and materially adverse employment consequence as a question of fact.[6]  Judge Sharpe also found as an issue of material fact the element of casual connection and as we know did not address the element of speech as a part of Jackson's official duties because *Garcetti* had not yet been decided.

Had it not been for the Defendants stating that they "retain the right to raise issues such as public concern, causation connection and damages," Dkt. No. 38-9, Defs.' Mem. of Law at p. 3, the Court would not have raised law of the case doctrine.  However, it was incumbent upon this Court

---

[6] Prior to rendering this ruling, Judge Sharpe made it explicitly clear that "legal conclusions [were] obviously [his] to make as to whether it's protected speech or whether it's not."  Dkt. No. 28, Tr. of Oral Order at p. 17.  In this regard, District Judge Sharpe announced that

> [a]s it relates to protected speech, it's clear that Jackson's speech qualifies as an issue of public concern, at least reviewing the facts as they most favor the plaintiff.  Therefore, the failure to reappoint based on the basis of protected speech has been established as an adverse employment action, even though Jackson may not have been entitled to that appointment.

Dkt. No. 28, Mot. Tr., at pp. 25-26.

to make clear to the Defendants that their supposition was in error; the issue of public concern was not one of the issues to be tried before the jury, rather, it was decided as a matter of law, as required by law, by Judge Sharpe's Oral Order.  We agree with Defendants that casual connection and damages will be presented to a jury.  And now, joining those elements to be tried is whether Jackson's speech was within his official responsibilities or as a private citizen.

Nonetheless, we are prepared to consider the public concern issue *de novo*.  Based upon the record presented to us, the content, context, and form of the speech, we find that the issues of governmental efficiency, the computer failures and transfer of governmental functions that may have contributed to delaying the issuance of incorrect tax bill the discussion pertaining to the legality of Local Law No. 6 and its conflict with New York Real Property Law § 1532, and the proposals to amend Local Law No. 6, constitute matters of a broader public purpose for the residents of Rensselaer County.  These matters inherently implicate matters of public concern inasmuch as they are matter of political, social, or other concerns to the community such as the operation of government, the administration of taxes, and wasteful and inefficient management of government.

We also agree with Judge Sharpe that not re-appointing Jackson, who had served the people of Rensselaer County for more than twenty-seven (27) years, is a materially adverse employment action, even though he was not entitled to that re-appointment.  *See supra* note 6.

For all of the reasons stated, the Motion for Reconsideration is **denied**.

### E.  Interlocutory Appeal

Defendants ask this Court if we deny their Motion for Reconsideration to certify the Court's MDO for an interlocutory appeal inasmuch as its involves an overarching question of law.  The authority of this Court to certify an issue for appeal is found in 28 U.S.C. § 1292(b) which reads as

18

follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

It is a basic tenet of federal law to defer appellate review until a final judgment has been entered.  *Estevez-Yalcin v. The Children's Vill.*, 2006 WL 3420833, at *1-2 (S.D.N.Y. Nov. 27, 2006) (quoting *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).  If a district court contemplates a § 1292(b) certification, that court should exercise great care.  *Id.* (citing *Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)). Immediate appeals should be a rare exception to the final judgment rule and should only be used to address "ephemeral questions of law that may disappear in the light of a complete and final record." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d at 864. Lastly, district court judges have unfettered discretion in granting or denying certification of interlocutory appeals. *Ryan, Beck & Co., LLC v. Fakih*, 275 F. Supp. 2d 393, 396 (E.D.N.Y. 2003).

Defendants provide several reasons to support their application to pursue an interlocutory appeal.  However, based upon all that has been stated above and in the MDO, we do not agree that the issue of which they complain is a controlling question of law as to which there is a substantial ground for difference of opinion as to the law and that the immediate appeal may materially advance the ultimate termination of the litigation.

The issue of which Defendants complain amounts to a plain ordinary question of fact, not

19

a question of law.  If the Court of Appeals will not decide matters of evidence sufficiency, even if one-sided, on a interlocutory appeal, it surely would not want to address what essentially is a question of fact. *Davidson v. Chestnut*, 193 F.3d 144, 150 (2d Cir. 1999).  Further, we do not concur that an appeal would materially advance the ultimate termination of the litigation, especially in light of the fact that this matter will be scheduled for trial within the next sixty (60) days and has been on and off the court's trial calendar for approximately three years. *See Cadlerock Joint Venture II, L.P. v. Milazzo*, 2007 WL 470323, at *1 (D. Conn. Feb. 8, 2007).  Another appeal, at this juncture, would prolong this already over-extended litigation and justice would not be served.  We must also bear in mind that the parties are not permanently foreclosed from presenting this ruling and their legal issues for appellate review.   Accordingly, the request for an interlocutory appeal is denied.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Defendants' Motion for Reconsideration (Dkt. No. 46) is **denied** insomuch as there is no clear error of law or a manifest injustice; and it is further

**ORDERED**, that Defendants' Request for the Court to certify its Memorandum-Decision and Order, dated January 19, 2007 (Dkt. No. 43) for Interlocutory Appeal is **denied**; and it is further

**ORDERED**, that the parties shall provide the Court with the dates and times they are available for a telephone conference during the weeks ending June 1 and 8, 2007, to discuss setting a trial date.

20

**IT IS SO ORDERED**.

Date:   April 17, 2007
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge